IN THE MATTER OF THE )       APPEAL NO. 89-019
ESTATE OF: )          CIVIL NO. 88-392
                   )
   LORENZO ROFAG, )      OPINION
                   )
         Deceased. )
_____ )

Argued and submitted on January 31, 1991

Counsel for Appellants:      Vicente Salas, Esquire
                            P.O. Box 1309
                            Saipan, MP 96950

                            Joseph Hill, Esquire
                            P.O. Box 971
                            Saipan, MP 96950

Counsel for Appellees:      Rexford C. Kosack, Esquire
                            P.O. Box 410
                            Saipan, MP 96950

BEFORE:   DELA CRUZ, Chief Justice, VILLAGOMEZ, Associate Justice, and ATALIG, Special Judge.

VILLAGOMEZ, Justice:

    This appeal is taken from a Superior Court ruling in a probate proceeding.[1] The court held that Juan Pua Naog and Jose Pua Naog (hereafter "Juan and Jose") are the heirs of the decedent, Lorenzo

---

[1] In re Estate of Rofag, Civil Action No. 88-392(P), Memorandum Opinion and Order (N.M.I. Super.Ct. November 17, 1989).

20

Rofag (hereafter "Rofag"). The ruling is based upon evidence adduced at a hearing and factual findings as summarized below.

Rofag was a Carolinian man who lived in a Carolinian community in Tanapag Village, Saipan during the German and Japanese occupations.[2] The German Administration granted him a homestead land located in what is now known as Lower Base, Saipan. The land consisted of Lot numbers 781, 782, 784, 785, 788 and 789 which were granted as his individual property.

Since Rofag was never married and had no natural children, he took his niece, Magdalena Pua, (hereafter "Magdalena") into his household and raised her. After Magdalena was married, she and her husband and children continued to live with Rofag. She took care of him in his old age until he died, intestate, on April 14, 1944.

On December 30, 1944, Magdalena submitted to the U.S. military government a "Statement of Land Ownership", claiming ownership of Rofag's land (Lots 781, 784, 785, and 789) through inheritance. She re-submitted a similar claim in 1948.

In 1953, the Trust Territory Government issued Determination of Ownership No. 552 declaring that Lots 784 and 785 belonged to the heirs of Rofag, represented by Magdalena as land trustee. The determination did not mention the other two lots that Magdalena claimed. Lots 781 and 789 were determined to be owned by Rofag's heirs in 1984 by the CNMI Government. The Trust Territory title determination did not adjudicate who Rofag's heirs were. See

---

[2] Germany administered the Northern Marianas Islands from about 1898 to 1914, and Japan from 1914 to 1944.

*Estate of Joaquin C. Dela Cruz*, No 90-023 (N.M.I. Feb. 7, 1991). (Where the Trust Territory title determination did not settle heirship, res judicata does not bar subsequent adjudication of heirship.) Subsequently, Magdalena executed an exchange agreement and deeded Lots 784 and 785 to the Trust Territory Government in exchange for public land situated at Talofofo, Saipan.

Magdalena died intestate in 1969, survived by her two sons, Juan and Jose. In the 1970's Juan and Jose submitted a war damage claim to the Micronesian War Claims Commission and received $78,205.00 for damages caused to Rofag's land. No one else made any claim for such damages. After receiving the money, Juan and Jose kept the entire amount for themselves. No one objected or claimed any right to the war claims award.

In 1988, Rofag's niece, Maria Sablan, (one of the appellants) petitioned to probate the estate of Lorenzo Rofag, deceased. Maria Sablan subsequently withdrew her name in the petition and Margarita Sarapao (the other appellant), a grandniece of Rofag was appointed administratrix.

In the same probate action, Juan and Jose filed a claim with the court asserting that they were the sole heirs of Rofag in that their mother was Rofag's sole adoptive daughter -- adopted pursuant to Carolinian custom.

The trial court set an evidentiary hearing to determine Rofag's heirs. The hearing lasted several weeks. At the hearing, appellants contended that Rofag died intestate, without issue. Therefore, his estate descended to his siblings or their

respective heirs per stirpes, including Juan and Jose. To the contrary, appellees, Juan and Jose, contended that Rofag adopted their mother, Magdalena, by custom. Consequently, upon Rofag's death, his entire estate descended to Magdalena, then upon Magdalena's death, her entire estate descended to the two of them.

Three expert witnesses testified as to Carolinian customary adoption called "mwei-mwei"[3] and several other witnesses testified for or against the alleged adoption of Magdalena by Rofag. The parties submitted both written opening statements and written final arguments.

The trial court, after considering all the evidence, found by preponderance of the evidence that Rofag adopted Magdalena by custom and his rightful heirs are her surviving sons, Juan and Jose. This appeal followed. Three issues are raised and are discussed separately below.

## I.

The first issue is whether the trial court may entertain a

---

[3] "Mwei-Mwei" is a Carolinian customary method of adopting children. Normally, the child to be adopted is a baby, but there is evidence that a child who is nine, ten, or eleven years old could be customarily adopted, depending upon the circumstances. The adoption takes place between relatives, initiated by the women and normally a married couple, as opposed to a single person, adopt the child. (There is also evidence that single persons have adopted children by custom.)

Customarily, the adopting parents propose to adopt a child and the natural parents must give their consent. Once the child is adopted under this custom, he/she is treated and considered as a natural child for all purposes.

23

claim of customary adoption in a probate proceeding. This is an issue of law which we review <u>de novo</u>. <u>Sablan v. Iginoef</u>, No. 89-008 (N.M.I. June 7, 1990).

The statutory basis for the trial court's jurisdiction in probate matters is 8 CMC § 2202 which provides:

> (a) To the <u>full extent</u> permitted by the Northern Mariana Islands Constitution and the Schedule on Transitional Matters, the Commonwealth Trial Court shall have jurisdiction over <u>all subject matter</u> relating to the estates of decedents, including construction of wills and <u>determination of heirs and successors of decedents.</u>

> (b) The Commonwealth Trial Court shall have <u>full power</u> to make <u>orders</u>, <u>judgments</u>, and <u>decrees</u> and take all <u>other action</u> necessary and proper <u>to administer justice</u> in the matters which come before it.

(Emphasis added.)

The statute grants the trial court the broadest possible authority to entertain any relevant matters that may come before it in a probate matter. It specifically grants the court the authority to determine the heirs and successors of decedents.

Based on that grant of authority, the trial court in this action held an evidentiary hearing to determine Rofag's heirs. In so doing, it was required to entertain all the claims asserted by the parties, including the one on customary adoption. The trial court clearly had the authority to entertain the parties' opposing claims to Rofag's estate.

24

Appellants argue that since 8 CMC § 1105[4] provides for judicial confirmation of customary adoption in a special proceeding, the probate court may not entertain such claim. They contend that the proponent of a customary adoption should first file a separate petition pursuant to 8 CMC § 1105, obtain a confirmation decree, then submit such decree to the probate court if it is relevant to a probate claim. They urge reversal of the trial court's ruling in this case because it did not require Juan and Jose to follow this procedure.

---

[4] § 1105.  Proceedings in Adoption, Annulment, or Divorce: Confirmation in Accordance With Recognized Custom.

(a)  When an adoption, annulment, or divorce has been effected in the Commonwealth in accordance with recognized custom and its validity  is questioned or disputed by anyone in a manner so as to cause serious embarrassment to or affect the property rights of any of the parties or their children, any party thereto or any of the party's children may bring a petition in the Commonwealth Trial Court for a decree confirming the adoption, annulment, or divorce effected in accordance with recognized custom.  The petition shall be signed and sworn to by the petitioner personally.

(b)  If, after notice to all parties still living and a hearing, the Court is satisfied that the adoption, annulment, or divorce alleged is valid in accordance with a recognized custom in the Commonwealth, the Court shall enter a decree confirming the adoption, annulment, or divorce and may include in this decree the date it finds the adoption, annulment, or divorce was absolute until the period for appealing has expired without any appeal having been filed or until any appeal taken shall have been filed or until any appeal taken shall have been finally dispatched.

25

Eight CMC §§ 1104[5] and 1105 contain the following significant provisions concerning customary adoptions:

1. No restriction or limitation may be imposed upon the granting of an adoption in accordance with local custom.

2. When the validity of a customary adoption is questioned or disputed, causing serious embarrassment or affects property rights, any party "may" petition the trial court for a decree confirming the adoption. The filing of such petition is permissive rather than mandatory.[6]

3. After notice to all living parties and a hearing, the trial court shall issue a decree confirming the customary adoption, if it is satisfied that the adoption is valid.

We find that 8 CMC § 1105 does not expressly or impliedly provide that it constitutes the exclusive means by which the trial court can determine the validity of customary adoption.

The general purpose of these provisions is to acknowledge and

---

[5] § 1104. Proceedings in Adoption, Annulment, or Divorce: Local Custom Recognized.

Except as provided for in Section 1105, nothing contained in this Division shall apply to any adoption, annulment, or divorce effected in accordance with local custom, nor may any restrictions or limitations be imposed upon the granting of an adoption, annulment, or divorce in accordance with local custom.

[6] "Unless the context of its use suggests otherwise, the word 'may' in a statute connotes a permissive rather than a mandatory provision." Bauer v. McCoy, 1 CR 248, 268 (D.N.M.I. 1982).

26

affirm the existence of customary adoption in the CNMI.[7] Section 1105 specifically provides a special procedure for any party to show that there has been a customary adoption and to obtain a judicial confirmation thereof, independent of a probate proceeding or other action. So long as the notice and hearing requirements are met, we see no reason why a probate court should not entertain the issue of adoption in a probate proceeding.

In this case, the interested parties were given adequate notice. The evidentiary hearing was exhaustive. We, therefore, hold that it was not erroneous for the trial court to entertain the issue of customary adoption which is directly related to the issue pertaining to the determination of heirs. The trial court order confirmed that Magdalena was adopted by Rofag, in accordance with Carolinian custom.

## II.

The second issue is whether the trial court may apply a preponderance of the evidence standard in determining the issue of customary adoption. This is also an issue of law which we review de novo. Sablan v. Iginoef, supra.

Appellants contend that the trial court erred in applying a preponderance of the evidence standard of proof. They contend that pursuant to 8 CMC § 1105, the court should have applied the clear

---

[7] In addition, 7 CMC § 3401 generally upholds customary law by giving it priority over common law.

and convincing standard. They also contend that if a higher standard of proof is not applied, fraudulent claims of customary adoption will abound.

Juan and Jose counter by contending that the standard of proof should be by preponderance of the evidence.[8] They argue that to apply a stricter standard of proof would frustrate the intent of our laws, which is to uphold and preserve customary practices. It would frustrate such purpose by making it difficult for a person to prove that he has been adopted by custom.

Our adoption statutes do not state what standard to apply in proving customary adoption. Eight CMC § 1105 only requires that proof of adoption shall be to the satisfaction of the court.

It is clear that customary adoption as practiced in the CNMI does not exist in the United States.[9] Consequently, we cannot

---

[8] They cite 2 C.J.S., Adoption of Persons, § 132 (19  ):

"[g]enerally the fact of adoption must be established by a preponderance of the evidence which must disclose sufficient compliance with the statutory requirements."

[9] The adoption of one person by another was unknown to the common law. The right to adopt a child and the right of a person to be adopted as a child of another are wholly statutory. He who claims that an act of adoption has been accomplished must show that every essential requirement has been complied with. The right being entirely a creature of the statute, we must necessarily look to the statute alone for the authority to adopt, and if not expressed it cannot legally exist.

In re Taggart's Estate, 213 P. 504-05 (Cal. 1923) (citations omitted). See also, In re Adoption of Bradfield, 642 P.2d 214 (N.M. App. 1982); In re Estate of Randall, 506 P.2d 432 (Wyo. 1973).

28

resort to U.S. case law for guidance. Instead, we must examine pertinent CNMI law.

The root of the parties' disagreement concerning the standard of proof lies in the language of 8 CMC § 1105. The statute merely states that the court must be "satisfied" that a customary adoption has been established.

A basic principle of statutory construction is that language must be given its plain meaning. Commonwealth v. Hasinto, Nos. 90-033 and 90-034 (consolidated) (N.M.I. October 15, 1990). Unfortunately, the term "satisfied" is ambiguous. It is therefore necessary for us to give it the meaning that the legislature intended.[10]

One statutory provision should not be construed to make another provision inconsistent or meaningless. Island Aviation, Inc. v. Mariana Islands Airport Authority, 1 CR 353 (D.N.M.I. 1983). To construe "satisfied" as the appellants suggest would be inconsistent with 8 CMC § 1104: "nor may any restrictions or limitations be imposed upon the granting of an adoption . . . in accordance with local custom." A clear and convincing standard of proof would restrict judicial recognition of customary adoption. Accordingly, we conclude that the preponderance of the evidence standard is consistent with legislative intent in establishing claims of customary adoption. This standard should be applied in

---

[10] "When interpreting a statute, a court's objective is to ascertain and give effect to the intent of the legislature." Office of the Attorney General v. Cubol, 3 CR 64, 73 (D.N.M.I. App. Div. 1987).

29

any proceeding in which such a claim is raised. We affirm the trial court's application of the preponderance of the evidence standard in the proceeding below.

## III.

The third issue is whether the trial court's finding of a customary adoption is supported by the evidence. This involves a question of fact which we review to determine if it is clearly erroneous. Com.R.Civ. P.52(a).

The appellants contend that the evidence does not support the trial court's finding that Rofag adopted Magdalena according to Carolinian custom. This argument has no merit. It essentially raises factual claims that are properly presented to the trier of fact at trial.

The appellants single out evidence from the record supporting the conclusion that no customary adoption was ever effected.[11]

The appellants even argue that the trial court improperly considered some evidence, failed to consider other evidence, and gave more weight to some evidence than others. But isn't this the essence of a trial court's function when it sits as the finder of fact?

We think it important to re-examine and reiterate our role as an appellate court in reviewing a trial court's findings of fact.

---

[11] The appellees, on the other hand, point out numerous evidence from the record supporting the court's finding of customary adoption.

30

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Com.R.Civ.P. 52(a). "A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake." In re Estate of Torres, 1 CR 237, 243 (D.N.M.I. App. Div. 1981); see also, Commonwealth v. Cabrera, 3 CR 655 (D.N.M.I. App. Div. 1989). We will accord particular weight to a trial judge's assessment of conflicting and ambiguous evidence. Aldan v. Kaipat, 2 CR 190 (D.N.M.I. App. Div. 1985), aff'd, 794 F.2d 1371 (9th Cir. 1986). The test is whether the trial court could rationally have found as it did, rather than whether the reviewing court would have ruled differently. In re Estate of Taisakan, 1 CR 326 (D.N.M.I. App. Div. 1982).

In short, when a "trial court's finding is supported by substantial evidence, it should not be disturbed on appeal." Candelaria v. Yano Enterprises, Inc., 2 CR 220, 223 (D.N.M.I. App. Div. 1983).

We have examined the record and considered the evidence cited by both parties. We do not have a definite and firm conviction that the trial court committed a mistake. Torres, supra. There is substantial evidence supporting its finding that Magdalena had been adopted by Rofag pursuant to the Carolinian custom of "mwei-mwei," Candelaria, supra, and that Juan and Jose are Rofag's "rightful

31

heirs" through their mother.  The trial court's finding is not clearly erroneous.

The trial court's Memorandum Opinion and Order is hereby AFFIRMED.

Dated this 22ⁿᵈ day of February , 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
PEDRO M. ATALIG, Special Judge