**Colin DYACK, Plaintiff–Appellant,**

v.

**COMMONWEALTH OF THE NORTH-ERN MARIANA ISLANDS; Joseph K.P. Villagomez, Defendants–Appellees.**

No. 02–15393.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed Jan. 23, 2003.

*Co.,* 300 F.3d 1112, 1117 (9th Cir.2002).

Jay H. Sorensen, Saipan, MP, for the plaintiff-appellant.

Andrew Clayton, Assistant Attorney General for the Commonwealth of the Northern Mariana Islands, Saipan, MP, for the defendants-appellees.

Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

FISHER, Circuit Judge.

Appellant Colin Dyack ("Dyack") filed this action under 42 U.S.C. § 1983 against the Commonwealth of the Northern Mariana Islands ("CNMI") and its Secretary of Public Health, alleging that the defendants violated his due process rights when they fired him from his position as a physician with the Department of Public Health without notice or an opportunity to be heard. The District Court granted summary judgment to the defendants, finding as a matter of law that Dyack was not a member of the CNMI civil service and therefore not entitled to notice of termination or an opportunity to respond. We agree and affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Dyack is a physician and a citizen of Canada.[1] In October 1999, he entered into a two-year employment contract with the CNMI to work for the Department of Public Health at the Commonwealth Health Center ("CHC") as an obstetrician/ gynecologist, for an annual salary of $101,500. The contract was entitled an "Excepted Service Employment Contract," indicating that Dyack was considered to be excepted from the CNMI's civil service system. The contract included a certification from the Director of Personnel for the CNMI's Office of Personnel Management, Mathilda Rosario, that the contract qualified Dyack "as Excepted Service under 1 CMC Section 8131 of the Commonwealth Code/Executive Order 94–3, Section 509(c)."[2]

Dyack's employment contract incorporated the Conditions of Employment set forth in a separate document. The Conditions of Employment provided that "[t]he Employer may terminate the Employee without cause upon notice sixty days in advance of termination of employment." Dyack signed the Conditions of Employment, as did Rosario.

Dyack's employment at the CHC began on October 22, 1999. On July 17, 2000, Dr. Martin Rohringer, CHC's Director of Medical Affairs, handed Dyack a letter of termination from the CNMI Secretary of Public Health, Joseph K.P. Villagomez. The letter stated simply that the Department of Public Health "has elected not to continue your employment" and that, pursuant to the Conditions of Employment and the CNMI's Excepted Service Personnel Regulations, Dyack's employment would be terminated sixty days from receipt of the letter. The letter stated that the termination "is not considered to be for reason of cause," and it expressed the government's desire "to ensure that you receive timely notification and have an opportunity to respond to this action." The letter informed Dyack that he had the right to further discuss the termination with the Director of Personnel, and it invited him to arrange an appointment with Secretary Villagomez if Dyack wished to discuss his termination. Dyack did not contact Villagomez or Rosario regarding his termination.

Dyack subsequently brought an action under 42 U.S.C. § 1983 against Villagomez and the CNMI in the District Court of the District of the Northern Mariana Islands. Dyack claimed that his termination with-

---

1. Because we are reviewing an order granting summary judgment to the defendants, we view the evidence in the light most favorable to the plaintiff. *Cripe v. City of San Jose,* 261 F.3d 877, 881 n. 1 (9th Cir.2001).

2. "CMC" refers to Commonwealth Code. We will cite the code as N. Mar. I.Code.

out notice or a hearing deprived him of his due process rights under the Fourteenth Amendment because he was a member of the CNMI civil service and therefore protected from termination without notice. He also brought state-law claims for premium pay and wrongful termination. Dyack moved for partial summary judgment on the § 1983 claim, and the defendants cross-moved for summary judgment on the issue of qualified immunity.

The District Court denied Dyack's summary judgment motion and sua sponte granted summary judgment in favor of the defendants on the merits of the § 1983 claim. The District Court found as a matter of law that Dyack was not a member of the CNMI civil service and thus not entitled to notice or a hearing. Instead, the court found, Dyack fell within the civil service exception of 1 N. Mar. I.Code § 8131(a)(2), which exempts employees where "the service to be performed is special or unique and nonpermanent, is essential to the public interest, and ... it would not be practical to obtain personnel to perform such service through normal public service recruitment procedures." The court did not address the qualified immunity issue, finding it moot in light of its ruling that Dyack was exempt from the civil service. The court dismissed Dyack's state-law claims, declining to exercise its supplemental jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### I. Due Process Claim

■ Dyack alleges that he was terminated without notice or an opportunity to respond, in violation of his Fourteenth Amendment right to due process. In order to determine whether Dyack's termination violated his due process rights, we must first determine whether Dyack had a constitutionally protected property interest

in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This court has held that "a state law which limits the grounds upon which an employee may be discharged, such as conditioning dismissal on a finding of cause," creates a constitutionally protected property interest. *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir.1988) (internal citation omitted). Where, however, a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right. *Id.*

In the CNMI, the Commonwealth Civil Service Act ("the Act"), codified at 1 N. Mar. I.Code § 8101, et seq., provides that all employees of the CNMI government are included in the civil service system, unless they fall into a statutory exception from the civil service. 1 N. Mar. I.Code § 8131(a). Under Article XX of the Commonwealth Constitution, only the legislature may create exceptions from the civil service. *See Manglona v. CNMI Civil Service Comm'n*, 3 N. Mar. I. 243, 249, 1992 WL 396825 (1992). The only statutory exceptions the legislature has chosen to create are the exceptions listed in 1 N. Mar. I.Code § 8131. *Sonoda v. Cabrera*, 1997 N. Mar. I. LEXIS 14, at *6 (1997). Employees who fall within one of these exceptions are referred to as "excepted service" employees.

Civil service employees are subject to the Personnel Service System Rules and Regulations ("PSSRR"), which implement the provisions of the Act. PSSRR § I.A. Under the PSSRR, civil service employees may be terminated only for cause and are entitled to notice and a hearing prior to termination. PSSRR § III.D2(J), (M). In contrast, excepted service employees are governed by the Excepted Service Personnel Regulations ("ESPR"), which confer no such protections. The ESPR provides

that excepted service employees may be terminated without cause upon 60 days notice, with no entitlement to a grievance procedure. ESPR § I.9(A). Under this scheme, only civil service employees have a property right to continued employment. The critical question, then, is whether Dyack was excepted from the CNMI civil service pursuant to one of the exceptions listed in § 8131(a).

The defendants contend that Dyack was excepted from the civil service under § 8131(a)(2), which excepts "[p]ersons or organizations retained by contract where the Personnel Officer has certified that the service to be performed is special or unique and nonpermanent, is essential to the public interest, and that, because of the degree of expertise or special knowledge required and the nature of the services to be performed, it would not be practical to obtain personnel to perform such service through normal public service recruitment procedures."[3] 1 N. Mar. I.Code § 8131(a)(2). Dyack does not dispute that the services he performed as a physician were special or unique and essential to the public interest, or that it would be impractical for the CNMI to obtain qualified physicians through normal public service recruitment procedures. The only issue is whether Dyack's two-year position was "nonpermanent" within the meaning of § 8131(a)(2).

▮ In construing a state statute, we are bound by the pronouncements of the state's highest court. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). If the state's highest court has not addressed the issue, then we must predict how that court would interpret the statute. *Id.* The CNMI Supreme Court has not yet construed § 8131(a)(2). Accordingly, our

task is to predict how it would interpret that statutory provision. *Id.*

In the CNMI, as in the Ninth Circuit generally, it is a basic principle of statutory construction that language in a statute must be given its plain meaning. *Commonwealth Ports Authority v. Hakubotan Saipan Enters., Inc.*, 2 N. Mar. I. 212, 221, 1991 WL 258324 (1991) (citations omitted); *see also United States v. Rashkovski*, 301 F.3d 1133, 1136 (9th Cir.2002) ("Under the rules of statutory construction, [t]he plain meaning of the statute controls . . . .") (internal quotation marks and citations omitted). If the statutory language is ambiguous, "[i]t is therefore necessary for us to give it the meaning that the legislature intended." *In re Estate of Rofag*, 2 N. Mar. I. 18, 29, 1991 WL 70067 (1991); *see also United States v. Buckland*, 289 F.3d 558, 565 (9th Cir.2002) (en banc) ("Where the language is not dispositive, we look to the [legislative] intent. . . .").

▮ In this case, the dispute centers on the meaning of the term "nonpermanent," which the CNMI legislature has not explained. The Oxford English Dictionary does not define "nonpermanent," but it defines "permanent" as "[c]ontinuing or designed to continue indefinitely without change; abiding, lasting, enduring; persistent." OXFORD ENGLISH DICTIONARY (J.A. Simpson & E.S.C. Weiner eds., 2d ed.1989). Under this definition, a two-year position is clearly nonpermanent.

We cannot end the inquiry there, however, because a closer inspection reveals that the dictionary definition of permanent does not translate well in the employment context. No job literally lasts indefinitely without change; in fact, it is hard to conceive of a position of employment that

---

**3.** The defendants do not contend that any other statutory exemption applies to Dyack's    employment.

would qualify as permanent under this definition. In light of this ambiguity, we must seek to determine the meaning the CNMI legislature intended. *See Estate of Rofag,* 2 N. Mar. I. at 29; *see also Buckland,* 289 F.3d at 565.

By enacting § 8131(a)(2), the CNMI legislature excepted from the civil service skilled professionals who perform essential services that are not readily available in the CNMI. Unlike civil service employees, these excepted service employees are not subject to the CNMI's uniform salary schedule, and they are entitled to benefits that are not available to civil service members, such as housing or a housing allowance. 1 N. Mar. I.Code § 8212; ESPR § I.8(B). The exemption is designed to allow the CNMI to recruit for limited terms of service highly trained professionals who would be unlikely to accept employment with the CNMI government if they would be subject to the compensation restrictions that apply to civil service employees.

The purpose of the exception, then, would be defeated by a finding that Dyack was a member of the civil service. As the district court found—and Dyack does not dispute—the services Dyack performed as a physician at the CHC were special or unique and essential to the public interest, and it would be impractical for the CNMI to obtain such services through normal public service recruitment methods. Moreover, Dyack received benefits, such as an unscaled salary, a housing allowance and repatriation expenses, for which he would not have been eligible as a civil service employee. The nature of the services he provided and the terms of his contract indicate that Dyack's position was precisely the sort of employment that the

legislature sought to exempt from the civil service when it enacted § 8131(a)(2).

Dyack nonetheless asks us to hold that his two-year position was not excepted from the civil service under § 8131(a)(2) because that exception applies only to non-permanent employment, and under the Personnel System Rules and Regulations, all positions that are authorized to continue for more than one year—including Dyack's—are considered to be permanent positions. PSSRR § III.B2. In support of this argument, Dyack cites a CNMI Superior Court order, *Bisom v. CNMI,* No. 96–1320 (Order dated November 6, 1998), and a decision by the District Court for the District of the Northern Mariana Islands, *Gourley v. Sablan,* No. 94–0046 (Order dated August 8, 1995), each of which used the PSSRR definition of permanent to define the term "nonpermanent" for the purposes of § 8131(a)(2). Dyack also notes that the exceptions codified at § 8131(a)(10) and (11) apply only to positions that do not exceed one year in duration.[4]

We are not persuaded, however, that the legislature intended the civil service to include employees such as Dyack, who otherwise fit within the § 8131(a)(2) exception, simply because their employment lasted for longer than one year. The legislature's use of a one-year limit for the exceptions in § 8131(a)(10) and (11) does not indicate that it intended that limit to apply to § 8131(a)(2) as well. Indeed, the legislature's choice not to restrict the § 8131(a)(2) exception to positions lasting one year or less, when it explicitly applied this limit to the § 8131(a)(10) and (11) exceptions, suggests that the intent was not to create such a bright-line definition of nonpermanent under § 8131(a)(2).

---

**4.** Section 8131(a)(10) exempts "[p]ositions of a part-time nature requiring the services of four hours or less a day but not exceeding one year in duration." Section 8131(a)(11) ex-

empts "[p]ositions of a temporary nature which involve special projects having specific completion dates which shall not exceed one year." 1 N. Mar. I.Code § 8131(a)(10), (11).

The PSSRR's definition of a permanent position as one that is authorized to last longer than one year is similarly inapplicable to § 8131(a)(2). The Personnel Service System Rules and Regulations were promulgated by the Civil Service Commission and apply only to those employees who are members of the CNMI civil service. 1 N. Mar. I.Code § 8117; PSSRR § I.C1.[5] The PSSRR's definition of permanent therefore serves to classify employees *within* the civil service—not to distinguish civil service employees from excepted service employees, which is the purpose of § 8131(a). It therefore would be inappropriate to rely upon the PSSRR as defining the terms of § 8131(a)(2).

■ Even if, as Dyack contends, the PSSRR's definition of permanent does apply to § 8131(a)(2), it would not alter our decision here. Although we generally defer to an agency's construction of a statute it administers, we will not do so where the agency's interpretation is contrary to the legislative intent. *Miller v. Commissioner of Internal Revenue*, 310 F.3d 640, 644 (9th Cir.2002) (citations omitted). Under the PSSRR's definition of permanent, employees who otherwise fit within the letter and spirit of the § 8131(a)(2) exception would be included in the civil service so long as they were hired to serve for more than one year—even if, as in Dyack's case, the employee received benefits that were unavailable to civil service employees, and all of the parties understood at the outset that the employment would be considered excepted service. There is no indication, however, that the legislature intended the length of employment to be the dispositive

factor in distinguishing civil service employees from excepted service employees under § 8131(a)(2). In fact, in 2001 the CNMI legislature passed Public Law 12–38, which deleted the word "nonpermanent" from § 8131(a)(2). This amendment provides powerful evidence that length of service was not central to the legislative purpose of § 8131(a)(2). *See Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1217 (9th Cir.2001) ("Although postenactment developments cannot be accorded the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions concerning the scope and purpose of the statute.") (internal quotation marks and citation omitted).

The lower court cases on which Dyack relies do not compel a different conclusion. We of course are not bound by these unpublished dispositions. Nor do we find them persuasive. In *Bisom v. CNMI*, the court's finding that the plaintiff's two-year position did not fall within the § 8131(a)(2) exception was based on its application, without analysis or explanation, of the PSSRR's definition of permanent. *Bisom* at 3. As we explained above, however, that definition is not only inapplicable to § 8131, but it is also contrary to the legislative purpose of the statute.

*Gourley v. Sablan* is similarly inapposite. In *Gourley*, the district court found that a plaintiff employed by the CNMI as a fishery biologist under a two-year contract was not excepted from the civil service. Although the court noted that the plaintiff was a permanent employee under the PSSRR's definition of the term, its decision did not turn on the length of service alone.[6] In fact, the court was care-

---

**5.** PSSRR § I.C1 states that the regulations apply to all employees of the executive branch of the Commonwealth government, with certain enumerated exceptions. The exceptions track the language of the statutory exemptions listed in § 8131(a). *See* PSSRR § I.C1;

§ 8131(a). In fact, the exception described in PSSRR § I.C1(B) is identical to the § 8131(a)(2) exemption at issue here.

**6.** To the extent that the district court relied on the PSSRR for its ruling, it was in error.

ful to emphasize that it was undisputed that the plaintiff's position did not fall within any of the statutory exceptions of § 8131(a). *Gourley* at 9. In contrast to this case, none of the parties in *Gourley* contended that the plaintiff's position was special or unique and essential to the public interest, or otherwise fit within the purpose of the § 8131(a)(2) exception. Moreover, the decision in *Gourley* was driven by a concern that the executive branch was usurping the authority of the legislature by entering into excepted service contracts with employees, thereby depriving them of civil service benefits and protections, when the legislature clearly intended that those employees would be included in the civil service. *Id.* at 10. Such a concern is absent from this case, as there can be little doubt that the legislature intended to except employees such as Dyack from the civil service under § 8131(a)(2).

Accordingly, we hold that Dyack was excepted from the CNMI civil service pursuant to 1 N. Mar. I.Code § 8131(a)(2). As an excepted service employee, he was subject to termination without cause upon 60 days notice. He therefore did not have a constitutionally protected property interest in his employment, and the district court did not err in granting summary judgment to the defendants on Dyack's § 1983 due process claim.

## II. State-law claims

■ Upon granting summary judgment to the defendants on Dyack's § 1983 claim, the district court dismissed Dyack's state-law claims for premium pay and wrongful termination, declining to exercise its supplemental jurisdiction over those claims. Dyack contends that the court erred in doing so because it had diversity jurisdiction over his state-law claims. 28 U.S.C.

§ 1332(a)(2) invests the district courts of the United States with original jurisdiction over all civil actions where the matter in controversy exceeds the sum of $75,000, and is between citizens of a state and citizens or subjects of a foreign state. Dyack contends that because he is a citizen of Canada, a foreign state, and Villagomez is a citizen of the CNMI, a United States territory (and therefore a "state" for the purposes of § 1332), the district court had diversity jurisdiction over his state law claims.[7] However, the CNMI itself is also a defendant in this action, and "[t]here is no question that a State is not a 'citizen' for purposes of diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *see also Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir.1981) ("[S]tates are not 'citizens' within the meaning of 28 U.S.C. § 1332."). Accordingly, the CNMI's presence as a defendant in the action destroys complete diversity, precluding jurisdiction under § 1332. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 829, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal.") (citation omitted).

■ In the absence of diversity jurisdiction, the district court had discretion to decline to exercise supplemental jurisdiction over Dyack's state-law claims. 28 U.S.C. § 1367(c). We review the district court's dismissal of supplemental state-law claims for abuse of discretion. *Bryant v. Adventist Health Systems/West*, 289 F.3d 1162, 1165 (9th Cir.2002). In light of the district court's grant of summary judgment to defendants on Dyack's only feder-

---

**7.** Section 1332 provides that the word "States" as used in that section includes the territories of the United States. 28 U.S.C. § 1332(d).

al claim, the court did not abuse its discretion in dismissing the state-law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); *see also Bryant,* 289 F.3d at 1169 ("Because the district court did not err in granting summary judgment on the federal claims, it did not abuse its discretion in dismissing the state-law claims.") (citations omitted).

## CONCLUSION

We hold that Dyack was excepted from the CNMI civil service pursuant to 1 N. Mar. I.Code § 8131(a)(2), and therefore we affirm the grant of summary judgment to the defendants on Dyack's § 1983 due process claim. We also affirm the district court's dismissal of Dyack's remaining state-law claims.

AFFIRMED.