Opinion by Judge BEA; Dissent by Judge McKEOWN.
OPINION
BEA, Circuit Judge:
When a federal agency decides to change its rules to allow roads to be built through a federal forest it had previously ruled be preserved roadless, what reasons are sufficient to justify that change?
The United States Department of Agriculture (“USDA”) decided to change its rules to allow roads to be built through an Alaskan forest the USDA had previously ruled should be preserved roadless. We are called on to determine whether the USDA’s stated reasons for its change to such rules were sufficient, and the rule change valid, or arbitrary and capricious, and the rule change invalid.
The district court held invalid, as arbitrary and capricious, a 2003 USDA regulation that temporarily exempts the Tongass National Forest (“Tongass”) from application of the 2001 Roadless Area Conservation Rule (“Roadless Rule”).[1],[2] The State of Alaska appeals that order.
*974 We reverse the district court’s order because, in its 2003 Record of Decision (“ROD”), the USDA articulated a number of legitimate grounds for temporarily exempting the Tongass from the Roadless Rule. These grounds and the USDA’s reasoning in reaching its decision were neither arbitrary nor capricious.
I. Background
Various environmental organizations and Alaskan villages brought an action against the USDA and the United States Forest Service and several government officials challenging a 2003 Forest Service rule which temporarily exempts the Tongass from the Roadless Rule. The State of Alaska and the Alaska Forest Association intervened as Defendants.
Plaintiffs moved for summary judgment. Defendants opposed Plaintiffs’ motion and filed a cross-motion for summary judgment. The district court granted Plaintiffs’ motion and denied Defendants’ motion, entering an order setting aside the Tongass Exemption, reinstating the 2001 Roadless Rule as to the Tongass, and vacating all previously-approved Tongass area timber sales that were in conflict with the Roadless Rule. Only the State of Alaska now appeals.[3]
II. Standard of Review
We review de novo the district court’s grant of summary judgment. N. Idaho Cmty. Action Network v. United States Dep’t of Transp., 545 F.3d 1147, 1152 (9th Cir.2008). This action arises under the Administrative Procedures Act (“APA”), which provides for judicial review of final agency action. 5 U.S.C. §§ 701-706. Under the APA, a court may set aside agency actions only if such actions are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A).
Under this standard of review, an “agency must examine the relevant data and articulate a satisfactory explanation for its action.” Motor Vehicle Mfrs. Ass’n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). An agency’s action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency’s decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency’s decision is contrary to the governing law. Id.
An “initial agency interpretation,” however, “is not instantly carved in stone”; the agency “must consider varying interpretations and the wisdom of its policy on a continuing basis[.]” Nat’l Cable & Telecommunications Ass’n v. Brand X Internet Servs., 545 U.S. 967, 981, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 863-64,104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). To prevent a claim it was acting in an arbitrary or capricious manner, where an agency changes its policy, the agency must show awareness that it is changing a policy and give a reasoned explanation for the adoption of the new policy. FCC v. Fox Television Stations, 556 U.S. 502, 515-16, 129 S.Ct. 1800, 173 *975 L.Ed.2d 738 (2009). The agency does not always have to “provide a more detailed justification than what would suffice for a new policy.” Id. at 515, 129 S.Ct. 1800. But the Supreme Court cautioned judges not to determine whether “the reasons for the new policy are better than the reasons for the old one,” just whether the policy is permissible under the statute and “the agency believes it to be better.” Id. The Court emphasized: “the fact that an agency had a prior stance does not alone prevent it from changing its view or create a higher hurdle for doing so.” Id. at 519, 129 S.Ct. 1800. “[A] court is not to substitute its judgment for that of the agency and should uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.” Id. at 513-14, 129 S.Ct. 1800 (internal citations and quotation marks omitted).
Contrary to the district court’s finding that the USDA acted arbitrarily and capriciously, we find that the USDA clearly acknowledged the 2003 ROD is inconsistent with its previous Roadless Rule and gave a reasoned explanation for the change.
III. Discussion
The USDA clearly acknowledged that the 2003 ROD, which excluded the Ton-gass from the Roadless Rule, is inconsistent with its previous Roadless Rule, which included the Tongass. The USDA’s ROD stated that,
In State of Alaska v. USDA [3:01-CV-00039-JSK] the State of Alaska and other plaintiffs alleged that the roadless rule violated a number of Federal statutes, including the Alaska National Interest Lands Conservation Act of 1980 (ANILCA)
The Alaska Lawsuit alleged that USDA violated ANILCA by applying the requirements of the roadless rule to Alaska’s national forests [including the Ton-gass]. USDA settled the lawsuit by agreeing to publish a proposed rule which, if adopted, would temporarily exempt the Tongass from the application of the roadless rule (July 15, 2003, 68 FR 41865), and to publish a separate advance notice of proposed rulemaking (July 15, 2003, 68 FR 41864) requesting comment on whether to permanently exempt the Tongass ... from the application of the roadless rule.
68 Fed.Reg. 75136.
Furthermore, the USDA gave a reasoned explanation for the change which may “reasonably be discerned.” Fox Television, 556 U.S. at 513-14, 129 S.Ct. 1800. The USDA’s ROD explained that it created the Roadless Rule exemption to cease litigation,[4] meet timber demand, and decrease socioeconomic hardships on isolated Alaskan communities.
A. Ending the Alaska Litigation
The ROD’s preamble highlighted that the “roadless rule has been the subject of a number of lawsuits in Federal district courts in Idaho, Utah, North Dako *976 ta, Wyoming, Alaska, and the District of Columbia.” 68 Fed.Reg. 75136. The ROD explained that the district court of Wyoming had even permanently enjoined implementation of the rule, telling the USDA that it “must start over” with its roadless rulemaking.
The ROD detailed this ongoing litigation because, when it started roadless rulemak-ing, it had decided it would take numerous factors into consideration, including litigation. The ROD then drew on these facts and gave a detailed explanation of the reason for change in the rule:
Why is USDA Going Forward With This Rulemaking?
(3) litigation over the last two years. Given the great uncertainty about the implementation of the roadless rule due to the various lawsuits, the Department has decided to adopt this final rule, initiated pursuant to the settlement agreement with the State of Alaska.
Id. at 75137-38. The USDA also explained that, “Given the pending litigation, the [USDA] believes it is prudent to proceed with a decision on temporarily exempting the Tongass from prohibitions in the [R]oadless [R]ule.” Id. at 75142. Finally, the ROD concluded, “[f]or the reasons identified in this preamble” the USDA decided to exempt the Tongass from the Roadless Rule. Id. at 75144. These stated reasons in the ROD’S preamble clearly and repeatedly identify a reasoned explanation for the changed policy: a strategy to attempt to end the constant and continuous litigation stemming from the 2001 Roadless Rule.
Simply promulgating a rule pursuant to a settlement is not necessarily “arbitrary or capricious.” We can “reasonably discern” that the USDA became worried about the amount of resources it was expending to defend the Roadless Rule and that the Roadless Rule might[5] violate ANILCA. Thus, the USDA promulgated the Roadless Rule exemption to conserve resources and avoid a potential negative litigation outcome (ie., a final binding decision from a circuit court permanently enjoining the application of the Roadless Rule). By promulgating the Roadless Rule exemption, the USDA stopped litigation that may have resulted in a court-ordered permanent injunction against the application of the Roadless Rule in several states. The USDA’s ROD, on the other hand, is a solution that does not “foreclose options regarding future rulemaking” and allows the Roadless Rule to continue to exist in many other areas of Alaska and the country.
The district court held that the USDA’s rationale of providing “legal certainty” was “implausible” because all the temporary rule did was generate more litigation later and thus prolong the uncertainty. But this is merely post hoc ergo propter hoc analysis. Further, nowhere does the ROD state that the purpose of the Roadless Rule exemption is to create “legal certainty.” Of course, no settlement provides a “legal certainty” of no future litigation, even as between the parties, much less as *977 to nonparties.[6] The ROD states the purpose of the exemption was to cease current on-going litigation that was draining the USDA’s limited resources and which may have resulted in a negative outcome, similar to the negative outcome the USDA had experienced in Wyoming. The settlement agreement agreed to by the USDA did end the 2001 litigation by the State of Alaska.
The dissent claims that promulgating the roadless rule to end the Alaska and Tongass litigation is arbitrary and capricious because the USDA had promulgated the 2001 Roadless Rule to reduce nationwide litigation costs. Dissent at 983-84. As is plain, it had not quite ended litigation, at least in Idaho, North Dakota, Wyoming, Alaska, and the District of Columbia. All of these lawsuits were prompted by the 2001 Roadless Rule; each action sought to invalidate it. So, as the Supreme Court has instructed, an agency can change its policy. Fox Television, 556 U.S. at 515-19, 129 S.Ct. 1800. The ROD states, “The Wyoming District Court’s setting aside of the roadless rule with the admonition that the Department ‘must start over’ represents” a changed circumstance warranting the ROD.[7] 68 Fed.Reg. at 75144. In the face of such instruction by a federal court it is reasonable for an agency to re-think its rule and, as the dissent characterizes it, “bow[] to pressure.” [8] Dissent at 984.
Further, our district court examined the USDA’s decision, and this litigation, retrospectively. The dissent makes this mistake as well.[9] The dissent seems to imply that the USDA did not need to end litigation because it turned out well for the USDA in Wyoming, eight years after the Alaskan settlement was made. Dissent at 980-81 (citing Wyoming v. USDA, 661 F.3d 1209, 1272 (10th Cir.2011) for the proposition that the Tenth Circuit had upheld the 2001 Roadless Rule). The dissent later argues that the ROD created more litigation than it resolved. Dissent at 983-84 (citing a 2005 regulation and a 2006 case). But such an analysis second guesses the USDA’s decision based on 20/20 hindsight. Agencies are not soothsayers, and litigation is an uncertain art. These post-settlement results on appeal and new cases occurred two-to-eight years after the USDA promulgated the ROD. Absent any showing of corruption, we must presume the government was acting in good faith to avoid further negative outcomes such as the unreversed Wyoming district court judgment telling the USDA to start over.
With the help of that 20/20 hindsight it is debatable whether the USDA was correct in choosing to settle the Alaska lawsuit in the way it did and to think that such a settlement would remove legal uncertainty may be debatable. But whether *978 the USDA was correct in its prediction of what the future might bring is not the correct question; it is important to apply the correct standard of review to the ROD. This court’s duty is not to determine whether the exemption was the best or correct way to avoid litigation, or even whether the litigation should be ended, but merely to decide whether such litigation-ending policy is permissible and “the agency believe[d ] it to be better.” Fox Television, 556 U.S. at 515, 129 S.Ct. 1800. In 2003, the USDA was faced with Alaska’s lawsuit and the District Court of Wyoming’s ruling and could not predict what future litigation would bring. The USDA’s actions in settling the lawsuit and its reasoned explanation in the ROD supports the finding that the USDA believed that promulgating the Tongass exception would decrease litigation over the Roadless Rule. Under Fox Television’s deferential standard, the USDA’s ROD is not “arbitrary and capricious.”
B. Timber Demand
The USDA also explained that the Roadless Rule exception was being promulgated to increase timber production to meet predicted future demand. The agency decided that while 2001 timber demand could be satisfied with the Roadless Rule in effect, the Roadless Rule, if continued, would result in unacceptable consequences. The ROD states that,
The last three years represent a significant aberration from historical harvest levels. The 1980-2002 average harvest was 269 MMBF, and in no year prior to 2001 did the harvest level fall below 100 MMBF.... In light of this historical performance, the 124 MMBF low market estimate is not an unreasonable expectation for the coming decade, particularly if the current slump is merely a cyclical downturn.
68 Fed.Reg. at 75141. Thus, the USDA examined historical averages spanning twenty-two years, looked at the last three years of low demand data as a significant aberration, and determined that a “low market” historical estimate was a valid prediction of the future. The USDA has recognized expertise and discretion in predicting timber demand. See Friends of the Bow v. Thompson, 124 F.3d 1210, 1219 (10th Cir.1997) (Forest Service could discount study with technical defects based on its “substantial expertise” on the “relevant issues” of timber demand); Se. Conference v. Vilsack, 684 F.Supp.2d 135, 146 (D.D.C.2010) (“The Forest Service has discretion to make predictions of market demand” for timber.). It is certainly reasonable for the agency to determine that a higher market estimate from twenty-two years of data is preferable to a lower market estimate based upon demand in a short cyclical downturn, even for a “short-term” [10] rule. The economy could return to pre-downturn figures even in a short time span.[11] As the Supreme Court has instructed, we defer to agency expertise and should not “substitute [our] judgment for that of the agency.” Fox Television, 556 U.S. at 513, 129 S.Ct. 1800. Further, we do not have to determine whether the USDA chose the best method for predicting demand so long as the method is nei *979 ther arbitrary nor capricious. Id. at 515, 129 S.Ct. 1800; 5 U.S.C. § 706(2)(A).
The plaintiffs argue that using the low market scenario of 124 MMBF appears far too optimistic in light of the depressed demand from 2001 to 2003, and the dissent attacks the USDA’s decision as “speculation.” Dissent at 985-86. But we do not require agencies to be constant pessimists that may not promulgate a future rule— even a “short-term” future rule — based upon the opinion that the economy will improve and demand for timber will rise. Further, it is reasonable for the USDA to decide that even a potentially “short-term” rule could last long enough for the economy to make a marked improvement, which would result in rapidly changing near-term demand. Promulgating a rule that is meant to last at least several years on the basis of extensive historical averages and increased economic experience from the years 2001-2003 is not “arbitrary and capricious.”
C. Socioeconomic Hardships
Another reason for the USDA’s promulgation of the ROD was because of its appreciation of the socioeconomic hardships created by the Roadless Rule.[12]
The USDA’s ROD explains that “impacts of the roadless rule on local communities in the Tongass are particularly serious. Of the 32 communities in the region, 29 are unconnected to the nation’s highway system. Most are surrounded by marine waters and undeveloped National Forest System land.” 68 Fed.Reg. at 75139. The Roadless Rule would condemn these communities to continued isolation. Recognizing these unique circumstances, “the abundance of [other Tongass] roadless values,” and “the socioeconomic costs to local communities of applying the roadless rule’s prohibitions to the Tongass, all warrant treating the Tongass differently from the national forests outside of Alaska.” Id. The ROD states that this conclusion is consistent with the extensive 1997 Tongass Forest Plan. This is a reasoned explanation based on observable conditions and the USDA’s expertise. It may not be the decision the dissent would make, but it is not arbitrary and capricious.
The dissent argues that the ROD is arbitrary and capricious because the ROD was a temporary rule based on long-term predictions and did not identify any new facts to justify a change in policy. Dissent at 980-81. But as discussed above, it was not arbitrary and capricious for the USDA to use long-term, rather than short-term, data to promulgate a ROD, the expiration date of which was, and is, unknown. Further, as also discussed above, there was a change that forced the USDA to re-examine prior information and request new comments — changed legal circumstances caused by pending litigation and a different economic outlook. The USDA reexamined its prior policy and used its expertise to decide the socioeconomic hardships the 2001 Roadless Rule put on the unique and *980 isolated communities of Southeast Alaska were no longer acceptable. This evaluation was not arbitrary and capricious, and the dissent cannot use the fact that the USDA had a prior policy as a reason to make it so. See Fox Television, 556 U.S. at 519, 129 S.Ct. 1800 (“the fact that an agency had a prior stance does not alone prevent it from changing its view or create a higher hurdle for doing so”).
IV. Conclusion
The USDA’s reasons for promulgating the 2003 ROD are neither arbitrary nor capricious. The agency acknowledges that it has changed its previous policy of not exempting the Tongass from the Roadless Rule, and it has given reasoned explanations for the change based on litigation, changes in economic predictions, and previously found socioeconomic costs.
We hold that all of the USDA’s reasons are acceptable under the APA. However, even had we found that some of the USDA’s reasons were arbitrary and capricious, our scope of review requires affirmance if any of the reasons given are not arbitrary and capricious. See Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (reversing the district court’s holding that an agency decision was arbitrary and capricious while agreeing with the district court’s analysis as to one of the agency’s reasons as being, in fact, arbitrary and capricious).[13]
The USDA’s reasons for the exemption are entirely rational, and the ROD should be upheld. Because the district court decided the USDA’s reasons for exempting the Tongass from the Roadless Rule were arbitrary and capricious, it did not reach the question whether the USDA should have performed a Supplemental Environmental Impact Statement. Because we reverse the district court’s findings, we remand the case to the district court to decide whether a Supplemental Environmental Impact Statement is required in the first instance.
REVERSED and REMANDED.

. 68 Fed.Reg. 75136-1 (Dec. 30, 2003) (to be codified at 7 C.F.R. pt. 294).

. The Roadless Rule prevents all construction in unroaded portions of inventoried roadless areas, and "would establish national direction for managing inventoried roadless areas, and for determining whether and to what extent similar protections should be extended to uninventoried roadless areas.” The final Roadless Rule included prohibitions on timber harvest, road construction and reconstruction except for projects that already had a notice of availability of an Environmental Impact Statement ("EIS”) published in the Federal Register prior to the Roadless Rule’s publication in the Federal Register. 66 Fed. Reg. 3244-01 (Jan. 12, 2001) (to be codified *974 at 36 C.F.R. pt. 294). There are many such exempted projects. These exempted projects are not in dispute here.

. The Alaska Forest Association filed an ami-cus brief in support of the State of Alaska, but did not file its own notice of appeal. Neither the USDA nor the Forest Service appealed.

. The dissent claims that we have “sidestepped the primary justification that Alaska claims as the basis for the rule change: complying with the operative statutes” including ANILCA and the Tongass Timber Reform Act of 1990 (“TTRA”). We examine the agency’s reasons for promulgating the ROD — not an intervener’s assertion made in litigation. As the dissent points out, the ROD does not say that the USDA promulgated the rule to comply with ANILCA or the TTRA. However, what is determinative to establish the USDA’s reasons for the rule change are the USDA’s statements in the ROD that it promulgated the rule to remove the threat of litigation that sought to establish the roadless rule violated ANILCA or the TTRA.

. The settlement between the USDA and Alaska has boilerplate language stating that by entering into the settlement agreement the USDA did not agree with Alaska’s interpretation of ANILCA. This boilerplate is akin to recitations in standard settlement agreements that payor does not acknowledge liability simply by paying money to payee. But that language is not very relevant to determining the agency's reason for the rule change; the settlement exists to end the litigation. As the ROD states, the USDA promulgated the Road-less Rule exception to end litigation. Actions speak louder than words.

. Just ask a circuit judge whether he or she ever sees an appeal of a sentence arrived at in a plea agreement.

. Beyond litigation, the USDA also gave another detailed explanation of why it abandoned its 2001 decision that nation-wide regulation was preferable. The USDA decided that "given factors unique to Southeast Alaska, "the socioeconomic costs to local communities of applying the roadless rule's prohibitions to the Tongass ... warrants] treating the Tongass differently from the national forests outside Alaska.”.” 68 Fed.Reg. at 75139.

. Surely the dissent does not mean to suggest that promulgating a rule in light of a federal district court's order is an arbitrary and capricious act of "bowing to pressure.”

. Ironically, the dissent criticizes the USDA’s reason of promulgating the ROD to settle litigation based on hindsight and its reason of meeting timber demand (discussed infra part § III.B) based on too much foresight.

. The 2003 Roadless Rule exemption does not have an "expiration date.” The ROD states the exemption will last until a final rule is promulgated, however long that may take. As yet, no final rule has been promulgated. Thus this "short-term” rule has lasted over a decade.

. In fact, as soon as 2002 the State of Alaska was selling timber in quantities above its projected harvest — and at what the State of Alaska claims is an unsustainable level — to help bridge the gap between national forest harvest and local industry needs.

. The dissent states that one of the reasons the USDA went forward with the rule was "roadless values” and such a reason is also arbitrary and capricious. Dissent at 982-83. With respect, that is a misreading of the ROD. The USDA weighted roadless values in the ROD. But in its explicit statement "Why is the USDA Going Forward With This Rulemak-ing?”, the USDA never stated it was promulgating the rule because of roadless values. Instead, the ROD weighed roadless values as a reason for not exempting the Tongass from the 2001 Roadless Rule against reasons for doing so, and found the roadless values in the Tongass so abundant as not to require further protection. However, if “roadless values” is an independent reason for promulgating the ROD, then it is well within the discretion and expertise of the USDA to determine whether roadless values are abundant or not, even without the 2001 Roadless Rule.

. In Bowman, motor carriers filed applications with the Interstate Commerce Commission ("Commission”) to conduct general commodities operations between points in the United States. Bowman, 419 U.S. at 283, 95 S.Ct. 438. The applicants submitted evidence that the applicants’ service was required for public convenience, and the existing carriers submitted evidence that the existing carriers’ service was satisfactory and no new carriers were needed. Id. at 285, 95 S.Ct. 438. The Commission granted three of the applications. Id. at 283, 95 S.Ct. 438. The Commission found that the existing carriers’ evidence did not rebut the applicants' evidence that more carriers were needed because the existing carriers’ evidence (1) related to short periods of time or specific shippers and (2) the studies represented service provided by the existing carriers after the Commission had noticed the hearing. Id. at 287, 95 S.Ct. 438. The existing carriers brought an action in the district court to suspend, enjoin, and annul the order as arbitrary and capricious. Id. at 283, 95 S.Ct. 438. A three judge district court invalidated the order as arbitrary and capricious. Id. The district court held that the Commission had applied inconsistent standards because the evidence was based on the same study periods. Id. at 287, 95 S.Ct. 438. On direct appeal, the Supreme Court reversed and remanded. Id. at 284, 95 S.Ct. 438. The Supreme Court agreed with the district court’s conclusion of arbitrary and capriciousness as to the Commission's first reason and found there was no basis for the Commission to distinguish the evidence based on the short time period because all the evidence was based on short periods of time and particular shippers. Id. at 288, 95 S.Ct. 438. Then the Supreme Court found that the Commission’s second reason regarding the studies was a rational basis on which to distinguish the evidence. Id. Therefore, the Supreme Court upheld the Commission’s finding that the existing carriers did not rebut the applicant’s evidence of fitness and public need for new carriers.