RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent because I cannot agree that the roundup of the wild horses by the Bureau of Land Management (BLM) complied with the Wild Free Roaming Horses and Burros Act (the Act).
It is undisputed that Congress enacted this legislation to protect wild horses and burros “from capture, branding, harassment or death” and to do so while the horses and burros are “considered in the area where presently found, as an integral part of the natural system of the public lands.” 16 U.S.C. § 1331. Congress made an express finding that “wild free-roaming horses and burros are living symbols of the historic and pioneer spirit of the West; that they contribute to the diversity of life forms within the Nation and enrich the lives of the American people.” Id. Congress was concerned that “these horses and burros are fast disappearing from the American scene.” Id. From these explicit Congressional expressions, we can discern four important legislative purposes: (1) acknowledgment of the importance of wild horses as “living symbols” of our Western heritage; (2) recognition that these treasured symbols “are fast disappearing from the American scene;” (3) articulation of Congressional policy to protect wild horses “from capture, branding, harassment or death”; and (4) designation of the area where the horses are “presently found” to accomplish the protection of the wild horses. Id.
With these express Congressional purposes in mind, I now consider 16 U.S.C. § 1333, the specific provision under which the BLM effectuated removal of the wild horses from their home on the range.
Pursuant to 16 U.S.C. § 1333(a), the Secretary of the Interior is directed to first protect and then to manage the wild horse population. Wild horses and burros are considered “components of the public lands” who are to be managed “at the minimal feasible level.” 16 U.S.C. § 1333(a).
Section 1333(b) authorizes the Secretary to remove only “excess animals.” If an overpopulation of wild horses exists, the Act mandates that any removal take place “in the following order and priority, until all excess animals have been removed”:
*1074 (A) The Secretary shall order old, sick, or lame animals to be destroyed in the most humane manner possible;
(B) The Secretary shall cause such number of additional excess wild free-roaming horses and burros to be humanely captured and removed [for adoption] ...; and
(C) The Secretary shall cause additional excess wild free-roaming horses and burros for which an adoption demand ... does not exist to be destroyed in the most humane and cost efficient manner possible. 16 U.S.C. § 133S(b)(l)-(2).
The Act couldn’t be clearer. Congress, has specifically listed the order in which excess wild horses are to be removed. First, and before any horses are captured, “old, sick or lame animals” are “to be destroyed.” Id. § 1333(2)(A). Only after the first listed priority has been completed does the Act authorize “additional excess wild free-roaming horses and burros to be humanely captured and removed” for adoption. Id. at § 1333(2)(B). Finally, any remaining “additional excess wild free-roaming horses and burros” for which no adoption demand exists may be destroyed. Id. at § 1333(2)(C).
There is absolutely no textual support in the Act for the Secretary to capture the entire herd of wild horses, excess and non-excess alike, in total disregard of the explicit priority articulated in the Act. In addition, it cannot be gainsaid that the wholesale capture of the wild horse herd is the complete antithesis of the “minimal feasible level” of management mandated by the Act. 16 U.S.C. § 1333(a).
The majority overlooks this flagrant lack of compliance with the Act by adopting the BLM’s argument that the “gathering” of animals is not a removal governed by the provisions of § 1333(b)(2). Majority Opinion, pp. 1064-65. However, if the BLM is not managing the excess animals pursuant to § 1333(b)(2), no other portion of the Act authorizes capture of excess horses for the purpose of removal. And absolutely nothing in the Act authorizes the capture of non-excess horses. The definition of removal adopted by the BLM and parroted by the majority completely ignores the Act’s admonition against capturing or harassing the wild horses, and its instruction to manage the horses where they are found, as part of the public lands. See 16 U.S.C. § 1331. As stated, the BLM’s interpretation allows the capture of excess and non-excess horses alike, which was clearly not the intent of the carefully crafted legislation directed toward the capture and removal of excess horses only.
If, as the BLM argues and the majority accepts, its “gather” were not contemplated by § 1333(b)(2), Congress would not have carefully crafted the priority provisions of the Act. It is only after old, sick or lame animals are destroyed that the Act provides for additional excess wild horses to be captured. See § 1333(b)(2)(A)-(B). The BLM completely circumvented this statutory mandate and violated the express purpose of Congress to protect the wild horses from capture and/or harassment. See 16 U.S.C. § 1331. When an agency’s interpretation of a statute is totally inconsistent with the express purpose of the statute, that interpretation is null and void. See Int’l Longshoremen’s & Warehousemen’s Union v. Meese, 891 F.2d 1374, 1383 (9th Cir.1989), as amended (“This court recognizes that ordinarily an agency’s interpretation is entitled to deference, however, courts must reject an administrative construction of a statute that is inconsistent with the statutory mandate or that frustrates Congress’ purpose....”) (citation omitted).
Unlike the majority, I am not persuaded by the rationale in the district court decision of In Defense of Animals v. Salazar, *1075 675 F.Supp.2d 89 (D.D.C.2009). As an initial matter, that case involved the denial of a preliminary injunction and rested on a balancing of the preliminary injunction factors rather than a definitive legal ruling on the merits. See id. at 95-96 (discussing likelihood of success on the merits). More importantly, although the court purported to consider the purpose of the statute, see id., it completely ignored the actual text of the statute defining its purpose as to protect the wild horses from capture or harassment and to do so where the horses were “presently found.” 16 U.S.C. § 1331.
The record in this case reflects that the BLM has previously identified injured wild horses on the range without first capturing them. Therefore, no legitimate basis existed for cavalierly chasing the horses with helicopters for miles before capturing them, including horses who were admittedly non-excess.
Under the Administrative Procedure Act, an agency abuses its discretion when its actions are contrary to law. See Organized Village of Kake v. U.S. Dept. of Agric., No. 11-35517, 746 F.3d 970, 2014 WL 1229762 (9th Cir. Mar. 26, 2014) (articulating that “[a]n agency’s action is arbitrary and capricious if ... the agency’s decision is contrary to the governing law”) (citation omitted). In my view, the BLM actions completely flouted the Wild Free-Roaming Horses and Burros Act and thereby abused its discretion. See id. Because the BLM’s interpretation and application of the Act ignored the text, intent and purpose of the statute, absolutely no deference was owed to the agency action taken in reliance on that interpretation. See Int’l Longshoremen’s & Warehousemen’s Union, 891 F.2d at 1383; see also Dyack v. Commonwealth of N. Mariana Islands, 317 F.3d 1030, 1036 (9th Cir.2003) (“Although we generally defer to an agency’s construction of a statute it administers, we will not do so where the agency’s interpretation is contrary to the legislative intent....”) (citation omitted).
I respectfully dissent.